SYLVESTER & POLEDNAK, LTD.
JEFFREY R. SYLVESTER, ESQ.
Nevada Bar No. 4396
1731 Village Center Circle
Las Vegas, Nevada 89134
Phone: (702) 952-5200
Facsimile: (702) 952-5205
Email: Jeff@sylvesterpolednak.com
*Attorneys for Creditor Stolat Financial, LLC*

E-FILED: April 2, 2020

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>C & S COMPANY, INC.,<br><br>Debtor. | Case No.  BK-S-16-14155-MKN<br>Chapter 11<br><br>**EMERGENCY MOTION TO REOPEN BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 350(B), FEDERAL RULE OF BANKRUPTCY PROCEDURE 5010, 11 U.S.C. § 1142 AND THIS COURT'S FINAL DECREE**<br><br>Hearing Date: May 6, 2020<br>Hearing Time: 9:30 am |

*Creditor Stolat Financial, LLC* ("Stolat"), by and through its attorney of record, Jeffrey R. Sylvester, Esq., with the law firm of Sylvester & Polednak, Ltd., hereby submits this Motion to Reopen Bankruptcy Case (the "Motion") Pursuant to 11 U.S.C. § 350(B), Federal Rule of Bankruptcy Procedure 5010, 11 U.S.C. § 1142 (the "Bankruptcy Code"), and this Court's Final Decree.

This Motion is made and based upon the Declarations of Mark M. Weisenmiller, Esq. and James C. Jarocki, filed concurrently herewith, the attached Points and Authorities, the pleadings and papers on file herein, and any additional evidence or argument the Court may consider at the hearing of this Motion, if a party timely objects to this Motion.

# I.

# JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and § 157(b)(2)(O). The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 350(b), Federal Rule of Bankruptcy Procedure 5010 (the "Bankruptcy Rules"), and 11 U.S.C. § 1142. Further, pursuant to the Final Decree entered by this Court on January 11, 2019 (the "Final Decree"), the Court retained jurisdiction as "necessary to ensure that the purposes and intent of the Plan are implemented." *See* Final Decree [ECF No. 454].

2. Venue is proper pursuant to 28 U.S.C. § 1409(a).

3. Article 10 of the Confirmed Plan vested this Court with jurisdiction providing:

> 10.1. Jurisdiction. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and Reorganized Debtor after the Effective Date as is legally permissible including jurisdiction to:
> 10.1.7. Decide or resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of any Final Order, this Amended Plan, the Confirmation Order, or any Person's obligations incurred in connection with this Amended Plan or the Confirmation Order.

# II.

# FACTUAL BACKGROUND

**A.    Procedural Background**

4. On July 28, 2016 (the "Petition Date") the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, thereby commencing the Chapter 11 Case. [ECF No. 1]

5. Randy Sugarman (the "Trustee") was appointed trustee of the bankruptcy estate by order entered April 17, 2017. [ECF No. 174]

6. On June 14, 2018, the court confirmed the Trustee's Amended Plan of

Reorganization date March 7, 2018. [ECF No. 430]

7. On January 11, 2019, the court entered a final decree pursuant to Federal Rule of Bankruptcy Procedure 3022 finding that the Debtor's Bankruptcy Case had been fully administered. [ECF No. 454.]. Pursuant to the order, the court stated that its continuing jurisdiction was no longer necessary as the case had had been fully administered. The Final Decree closing the case was without prejudice to the reopening the case for further administration. *Id.*

**B.    The Dispute Over the Remaining Cash Amount Available for Distribution to Unsecured Creditors.**

8. Article 4.10.1 provides that Creditors with Allowed Unsecured Claims will receive a Pro Rata share of the Remaining Cash Amount.

9. Article 4.10.2 provides that Unsecured Creditors with Allowed Unsecured Claims will receive Subsequent Quarterly Distributions as follows:

> (a) On each subsequent Quarterly Distribution Date, all Creditors with Allowed General Unsecured Claims which were not, on the immediately preceding Initial Distribution Date or Quarterly Distribution Date, Allowed Claims, shall receive a Distribution to bring them into a Pro Rata position vis-à-vis all other Creditors with Allowed General Unsecured Claims.
> (b) On each Quarterly Distribution Date, after giving effect to the Distributions to be made pursuant to the preceding paragraph (a), Reorganized Debtor shall distribute the Remaining Cash Amount, Pro Rata, to Creditors with Allowed General Unsecured Claims prior to the Final Distribution Date.
> (c) On the Final Distribution Date, Reorganization Debtor shall distribute, Pro Rate, to Creditors with Allowed General Unsecured Claims, the Remaining Cash Amount.

10. Article 1.1.77 defines Remaining Cash Amount as follows:

> 1.1.77. Remaining Cash Amount. Twenty-Five (25) percent of all Cash received by the Reorganized Debtor between: (i) the Effective Date and the Initial Distribution Date; (ii) the Initial Distribution Date and the first Quarterly Distribution Date; (iii) the Quarterly Distribution Dates; and (iv) the last Quarterly Distribution Date and Final Distribution Date, as applicable, minus: (i) all other payments and distributions under this

3

Amended Plan; (ii) the costs of doing business and preserving the assets of the estate; (iii) depreciation; (iv) interest; (v) taxes; and (vi) other expenses.

11. Article 5.4 provides for the Post-Effective Date Management of Reorganized Debtor as follows:

> **5.4  Post-Effective Date Management of Reorganized Debtor.** From and after the Effective date, Reorganized Debtor will continue to be managed by Debtor's pre-petition managers, which management may subsequently be modified to the extent provided by Reorganized Debtor's articles of organization, by-laws, and operating agreement (as amended, supplemented, or modified). However, subject to the FDIC-R's reasonable consent, *the Trustee shall appoint a responsible person to review (at the end of each quarter during the term of the Second Amended and Restated Note) the Reorganized Debtor's balance sheets, income statements, statements of cash flow, and quarterly reports and respond to any reasonable inquiry of the FDIC-R for information and/or documents during the term of the Second Amended and Restated Note.* The responsible person shall be identified by the Trustee on or before the hearing set for confirmation of this Amended Plan.

(Emphasis Added).

12. Article 1.1.51 provided that the FDIC-R Claim was $1,498,483.32 - $500,000 of which comprised the FDIC-R Secured Claim as set forth in Article 1.1.53.  The FDIC-R Deficiency Claim is equal to the amount of the FDIC-R Claim after taking into account payment of the FDIC-R Secured Claim.  Article 4.1.2.

13. The FDIC-R assigned its Allowed Secured Claim and Deficiency Claim to Stolat Partners.

14. The Reorganized Debtor has made all payments required on the Allowed Secured Claim but has not made a single payment to Allowed Unsecured Creditors – including payments required to be made on the assigned FDIC-R Deficiency Claim.

15. Article 2.2 requires the Reorganized Debtor to pay each Allowed Administrative Claim upon the latest of the Effective Date or as soon thereafter as is practicable.

16. Additionally, the Reorganized Debtor has failed to pay the Allowed

4

Administrative Claim in the approximate amount of $50,000.00.

17. Stolat Partners, and counsel for the Trustee, have made repeated inquiries of the Reorganized Debtor's management for information related to the calculation of the Remaining Cash Amount available for distribution. The Reorganized Debtor has delayed in providing the requested information and has provided all of the information requested.

18. Stolat Partners has made a demand for payment relating to the calculation of Remaining Cash Amount. The Reorganized Debtor generally disputes that any amounts are owed.

19. After months of stonewalling by the Reorganized Debtor, Stolat Partners, as the holder of the FDIC-R Deficiency Claim was left with no other option but to move to reopen the bankruptcy case in order to initiate an adversary proceeding against the Reorganized Debtor to recover distributions owed.

### III.

### RELIEF SOUGHT

**A.   The Bankruptcy Case Should Be Reopened Pursuant to Sections 350(b) and 1142 of the Bankruptcy Code.**

The Debtor's bankruptcy case should be reopened pursuant to sections 350(b) and 1142 of the Bankruptcy Code and Bankruptcy Rule 5010 so that this Court can determine and finally adjudicate whether the creditors, general and unsecured, have received all distributions to which they are entitled under the Plan. If this motion is granted, Stolat Partners intends to file an adversary proceeding outlining the dispute with the Reorganized Debtor relating to the administration of the Plan.

### IV.

### LEGAL AUTHORITIES IN SUPPORT OF THE RELIEF SOUGHT

Section 350(b) of the Bankruptcy Code permits this Court to reopen a case that was closed "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b); *In the*

5

*Matter of Case,* 937 F.2d 1014, 1018 (5th Cir. 1991). Bankruptcy Rule 5010 provides that a case may be reopened under section 350(b) on the motion of the debtor "or other party in interest." Fed. R. Bankr. P. 5010. The phrase "or other cause" as used in Section 350(b) is a broad term which gives the bankruptcy court discretion to reopen a closed estate or proceeding when cause of such reopening has been shown. *In the Matter of Case,* 937 F.2d at 1018. This discretion depends on the circumstances of the individual case and accords with the equitable nature of all bankruptcy court proceedings. *Id.*

      Reopening the bankruptcy case is necessary to resolve the dispute between the Reorganized Debtor and the Stolat Partners over the Remaining Cash Amount and distributions owed to the Allowed General Unsecured Creditors and Allowed Administrative Creditors under the Plan. A confirmed plan of reorganization forms a contract to be interpreted by the court. *See Adelphia Recovery Trust v. Bank of Am., N.A.,* 390 B.R. 80, 89 (S.D.N.Y. 2008), *aff'd,* 379 Fed. Appx. 10 (2d Cir. 2010), *cert dism'd,* 131 S.Ct. 896 (2011). If Stolat Partners and Reorganized Debtor differ over their interpretation of the definition of Remaining Cash Amount, this Court is a proper forum to resolve that dispute for the proper administration of the assets of the estate to creditors.

      Further, Section 1142 of the Bankruptcy Code provides additional authority for reopening this Bankruptcy Case in order to ensure that the creditors receive all the distributions they are due under the Plan. Section 1142(a) provides that the Reorganized Debtor "shall carry out the plan and comply with any orders of the court." 11 U.S.C. 1142(a). Under Section 1142(b), the court

///

///

///

6

may direct the Reorganized Debtor... "to perform any other act... that is necessary for consummation of the plan." 11 U.S.C. 1142(b). Carrying out the plan fully requires the Reorganized Debtor to make the promised distribution of the Remaining Cash Amount as Excess as stated in Article 4.10.2 of the Plan.

DATED this 2nd day of April, 2020.

**SYLVESTER & POLEDNAK, LTD.**

By: /s/   Jeffrey R. Sylvester
Jeffrey R. Sylvester, Esq.
1731 Village Center Circle
Las Vegas, Nevada 89134
*Attorneys for Creditor Stolat Financial, LLC*

7